IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Antonio C. Morales, | : | |
| Plaintiff | : | Civil Action 2:12-cv-00580 |
| v. | : | |
| Franklin County Sheriffs, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

**ORDER**

This matter is before the Court on defendants Aisha DiLello and the City of Columbus's June 17, 2013 motion for summary judgment (doc. 35) and defendants Franklin County Board of Commissioners, Franklin County Sheriff's Office, Franklin County Prosecutor's Office, Franklin County Sheriff Zach Scott and Corporal Benjamin Jones, Deputy Jeffrey Rannebarger, and ID Techs Lisa Beck and James Spaulding's July 19, 2013 motion for summary judgment (doc. 36).

**I.     Allegations in the Amended Complaint**

On May 26, 2011, plaintiff was wrongfully arrested for unlawful sexual contact with a minor by two Franklin County Sheriff's deputies. Am. Compl. at ¶¶ 18, 21. The arresting deputies confused plaintiff with an individual by the name of Antonio Morales, who resided at a completely different address and who did not resemble the plaintiff. *Id.* at ¶ 19. Reasonable efforts and proper police procedure would have alerted

the arresting deputies and the ID Techs that they were arresting the wrong person because plaintiff did not resemble the individual who was criminally charged. *Id*. at ¶ 20. Defendants failed to confirm that plaintiff was the person that they were looking for and arrested him without probable cause or reasonable suspicion that he had ever committed a crime. *Id.* at ¶ 22. Plaintiff repeatedly advised the deputies that they were arresting the wrong person. *Id.* at ¶ 23. The deputies physically grabbed plaintiff and placed him under arrest, which constitutes an assault. *Id.* at ¶¶ 24-25.

Defendant Aisha DiLello was the investigative detective that caused or permitted the false arrest of plaintiff because she refused to accompany the deputies who arrested plaintiff. *Id.* at ¶ 11. Had DiLello participated in the arrest, she would had known that plaintiff was not subject to lawful arrest. *Id.* at ¶ 12.

The amended complaint alleges that the conduct of the arresting deputies and Detective DiLello were negligent and intentional. *Id.* at ¶¶ 27-30. The Franklin County Sheriff's Office, the Columbus Police Department, and the City of Columbus were negligent in their training of officers and detectives. *Id.* at ¶¶ 32-33.

The Franklin County Prosecutor's Office, through its employee Amy Pridday, sent an email to the Franklin County Sheriff requesting that plaintiff be arrested. Plaintiff was incarcerated for approximately six days, lost time from work, and suffered humiliation and embarrassment. *Id.* at ¶ 37.

The amended complaint asserts claims for assault, violations of Fourth Amendment rights, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## II.     Arguments of the Parties

### A.     City Defendants

As a preliminary matter, the City defendants maintain that plaintiff's state law claims for assault, negligent infliction of emotional distress, and intentional infliction of emotional distress make no specific reference or allegations as to the City defendants. In his Section 1983 claim for violations of his Fourth Amendment rights, the complaint asserts that Detective DiLello was negligent, intentional and reckless and that the City of Columbus was negligent in its training. Plaintiff alleges that had Detective DiLello participated in the intended arrest, defendants would have easily determined that plaintiff was not the person subject to lawful arrest. DiLello had investigated allegations of a suspect engaging in sexual conduct with two juveniles and the suspect was subsequently indicted. DiLello Aff. ¶

The City defendants argue that the undisputed facts fail to establish that DiLello's actions were in violation of the Fourth Amendment. As a detective with the Sexual Assault Squad of the Columbus Police Department, DiLello learned that the name of a possible suspect was Antonio Camilpa Morales of 138 Elmsbury Court. The suspect was indicted on two counts of sexual conduct with a minor, and a warrant was issued. The warrant accurately reflected the suspect's address in addition to listing the

address where the assaults allegedly occurred. According to the City defendants, there is no evidence that DiLello had any connection with the arrest of plaintiff due to a mistaken identity. There is no evidence that DiLello's information was inaccurate or that she had reason to believe that it was inaccurate. The mistaken arrest of the plaintiff, a result of almost identical names of the suspect and the plaintiff and the proximity of the arrest to the location of the crime, fails to show that DiLello's actions violated plaintiff's Fourth Amendment rights. DiLello was not present for the execution of the warrant and the arrest. The City defendants argue that the assertion that if DiLello had been present for arrest something might not have happened cannot establish a Fourth Amendment violation by DiLello.

The City defendants argue that the claim against the City also fails. To demonstrate that municipality is liable for constitutional violations under Section 1983, a plaintiff must identify a policy and show that the particular injury was incurred because of the execution of that policy. A local government must be the moving force of the constitutional violation in order to establish liability. The City defendants further argue that where the plaintiff fails to establish an actual constitutional violation, the municipality cannot be held liable under Section 1983.

The City defendants maintain that plaintiff does not identify any specific policy or custom. Rather he asserts that the City was negligent in training its officers and detectives. A "failure to train" theory can establish a claim against the City only where that failure to train demonstrates a deliberate indifference to the rights of residents. The

4

City defendants argue that plaintiff has failed to show that the need for training was so obvious and that the inadequacy was so likely to result in a violation of constitutional rights that the municipality can be said to have been deliberately indifferent to the need.

### B. County Defendants

The County defendants argue that the Franklin County Sheriff's and Prosecutor's Offices are not legal entities capable of being sued separately from the county government. The Board of County Commissioners, as the representative of the political subdivision, is specifically authorized to sue or be sued under Ohio Revised Code § 305.12. Under Chapters 309 and 311 of the Ohio Revised Code, the Sheriff's and Prosecutor's Officer are not separately authorized to sue or be sued on behalf of the "office" itself because they are not separate legal entities from the County government. In order to impose liability on a specific department, plaintiff must sue the individual policy maker, like the county sheriff or prosecutor.

The County defendants argue that even if the Court were to find that the Sheriff and Prosecutor's Offices are *sui juris*, all organizational defendants are entitled to political subdivision immunity under Ohio Revised Code § 2744.01(A)(1), which grants political subdivisions immunity from state law tort claims stemming from the actions of the political subdivisions and its employees. The County defendants maintain that none of the exceptions provided in Ohio Revised Code § 2744.02 are applicable.  As a result, the County defendants maintain that plaintiff's claims for assault, negligent infliction of emotional distress and intentional infliction of emotional distress must be dismissed.

The County defendants also argue that plaintiff's Section 1983 claim against the organizational defendants fails because a municipality cannot be liable under a theory of respondeat superior. The County defendants maintain that plaintiff's claim for failure to train fails because he failed to allege or come forth with evidence showing defendants were deliberately indifferent with respect to the failure to train claim.

The County defendants argue that Sheriff Zach Scott is not liable for any of plaintiff's claims. Sheriff was not in office at the time fo the arrest, and he did not have anything to do with the arrest.

The County defendants maintain that the individual defendants are entitled to qualified immunity for plaintiff's Section 1983 claims because plaintiff cannot show any constitutional violation of a clearly established right on the part of any individual defendant because the actions of the arresting deputies were reasonable. According to the County defendants, where law enforcement have probable cause to arrest one party and they reasonably mistake a second party for the first party, the arrest of the second party does not violate the Fourth Amendment.

Considering what Corporal Jones knew at the time of the arrest, it was reasonable for the deputies to mistake plaintiff for Antonio C. Morales. The ID technicians' limited involvement did not violate plaintiff's Fourth Amendment rights. The ID technicians processed an arrestee as they would any other.

6

The County defendants further argue that because plaintiff's arrest did not violate the Fourth Amendment, the individual defendants cannot be liable for assault[1]. If the arrest is valid, intentional contact which in ordinary circumstances would be tortious is privileged and not subject to liability. The County defendants further argue that the individual defendants are entitled to immunity under Ohio Revised Code § 2744 from plaintiff's assault and negligent infliction of emotional distress claims. Executing an arrest warrant and processing an arrestee is clearly within the scope of the employment for the deputies and Jail ID technicians. Plaintiff has no evidence that the arrest, or any tort stemming from it, was made with a malicious purpose, in bad faith, or in a wanton or reckless manner.

The County defendants also argue that plaintiff cannot support his claim of intentional infliction of emotional distress against any of the individual defendants because he cannot show outrageous conduct. Mistaken arrests do not go beyond all possible bounds of decency, and he cannot show defendants intended to cause him harm.

### C.     Plaintiff

On May 26, 2011, Deputies Jones and Rannebarger approached plaintiff at his residence. As the deputies were arresting him, plaintiff advised them that they were arresting the wrong person. Plaintiff told them that he had identification and could

---

[1] Defendants note that plaintiff's claim is probably more accurately stated as a claim for battery.

prove his identity immediately. An officer told plaintiff that he was in the country illegally and that he did not have any valid identification. Despite his statements that he had not committed a crime and that they were arresting the wrong person, neither officer allowed plaintiff to produce his identification at any time. Plaintiff had the ability to provide the officers with his permanent resident card and his alien registration card.

Plaintiff was wrongfully incarcerated for eight days.[2] His photograph was distributed in the newspaper in connection with the indictment against Antonio Camilpa Morales.

Both the prosecutor's office and the Columbus Police Department had information that the indicted Antonio Morales was illegally in the country and had no Social Security number. A Columbus police officer who worked in security at the apartment complex advised the deputies that there was an Antonio C. Morales who lived there. The officer provided the deputies with plaintiff's driver's license. Corporal Jones assumed that he driver's license was a forgery without doing any research.

When Deputy Rannebarger transported plaintiff to the police station, he determined that there was a discrepancy in the date of birth of the plaintiff and the suspect named in the indictment. Corporal Jones acknowledge Rannebarger's concerns but stated that he was fairly certain that they had arrested the right man. Jones

---

[2]Plaintiff was arrested on May 26, 2011 and released on May 30, 2011, which is five days, not eight.

dismissed the discrepancy because he had seen suspects have different dates of birth; he assumed plaintiff was lying even though plaintiff had repeatedly told them that they had arrested the wrong person. After plaintiff retained counsel who informed the prosecutor that they had the wrong individual, Detective DiLello confirmed that plaintiff was not the suspect.

Plaintiff argues that the case involves a proprietary function of the government, so defendants are not immune from liability. Plaintiff also argues that defendants were reckless in failing to adequately investigate whether they had arrested the correct person, particularly when plaintiff had repeatedly offered to prove to the police that he was not the person they were looking for. Plaintiff maintains that the police failed to follow their own procedures and had a duty to ascertain the proper identity of the arrestee. Plaintiff also contends that the police had information available to them, which they perversely disregarded.

Plaintiff further argues that he has met his burden for showing a Fourth Amendment violation because the defendants' actions were not based on a reasonable mistake. Plaintiff also maintains that a material issue of fact remains with respect to his claim for intentional infliction of emotional distress. Defendants were reckless in the execution of the arrest warrant and showed a wanton disregard for his repeated pleas to check his identification. He was placed in a jail cell and charged with crimes involving child sex offenses.

Plaintiff argues that the prosecutor is not entitled to absolute immunity when he is assisting in an investigative or administrative capacity.

### III. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## IV. Discussion

### A. City Defendants

To establish liability under Section 1983 against an individual defendant, a plaintiff must plead and prove that the defendant was personally involved in the conduct that forms the basis of his complaint. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A party cannot be held liable under Section 1983 unless the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Supervisory liability cannot be based upon the failure to act. *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Here, the complaint contains no allegations that defendant DiLello personally engaged in the unconstitutional conduct alleged in the complaint.

11

The complaint also asserts a claim against the City of Columbus. Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.5 (1978)). In an official-capacity action a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation or the entity's "policy or custom" played a part in the violation of federal law. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

The facts as to the City defendants are not in dispute. DiLello investigated the allegations concerning the suspect Antonio Camilpa Morales and reported the information to the Franklin County Prosecutor's Office. The information that she provided was accurate. DiLello had no further involvement in the subsequent arrest of plaintiff. Although plaintiff's assertion that he would not have been arrested had DiLello been present is likely correct, plaintiff has not provided any evidence that DiLello's presence was constitutionally required. Furthermore, plaintiff fails to challenge any policy or practice on the part of the City that led to his mistaken arrest. Plaintiff's state law claims for assault, negligent infliction of emotional distress, and intentional infliction of emotional distress make no specific reference or allegations as to the City defendants.

For the reasons stated above, Aisha DiLello and the City of Columbus's June 17, 2013 motion for summary judgment (doc. 35) is GRANTED.

### B. County Defendants

The Franklin County Sheriff's Office is not an entity capable of being sued. *Barrett v. Wallace*, 107 F. Supp. 2d 949, 954 -955 (S.D. Ohio, 2000)("Under Ohio case law, a county sheriff's office is not a legal entity that is capable of being sued."). The Franklin County Prosecutor's Office is also not an entity capable of being sued. "[C]ounties, as political entities, are not *sui juris*; they are held accountable through their elected representatives, to wit, their commissioners." *McGuire v. Ameritech*, Services, Inc. 253 F. Supp. 2d 988, 1015 (S.D. Ohio 2003).

Ohio Revised Code § 2744.02 grants political subdivisions, such as the Franklin County Board of Commissioners, with immunity from state law tort claims stemming from the actions of the political subdivision and its employees with respect to plaintiff's state law claims. Plaintiff mistakenly relies on section 2744.02(B)(2), which states that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Under Ohio Revised Code § 2744.01(C)(2)(a), the provision of police services is a governmental, not a proprietary, function.

Plaintiff's Section 1983 claim also fails against the Franklin County Board of Commissioners. As previously stated, to establish liability under §1983, a plaintiff must plead and prove that a defendant is personally responsible for the unconstitutional actions which injured him. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). *Respondeat superior* is not a basis for liability. *Polk Co. v. Dodson*, 454 U.S. 313,

325 (1981); *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  A supervisor is not liable unless the supervisor encouraged or somehow participated in the actionable events.  There is no liability under 42 U.S.C. §1983 for "mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As with the City defendants, plaintiff has failed to support his failure to train claim with any evidence. Plaintiff has not identified any policy or connected a policy or practice with the County and shown that his particular injury was incurred because of that policy. Plaintiff has not provided any evidence to show that the County Commissioners were deliberately indifferent to the rights of the community with respect to the tasks that law enforcement performs.

Sheriff Zach Scott cannot be liable for plaintiff's state law or Section 1983 claims because he did not have any personal involvement in the arrest of plaintiff.

The County defendants argue that plaintiff's Fourth Amendment rights were not violated because it was reasonable to believe that they were arresting the individual named on the warrant. In *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court stated that "[t]he Constitution does not guarantee only the guilty will be arrested." *Id.* at 145. The Court continued:

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers-all of whom may be potential defendants in a § 1983 action-is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of

>  innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id*. at 145-146. In *Baker*, the plaintiff was arrested pursuant to a valid warrant and detained in jail for three days despite his protests of mistaken identity. Repeated protests of innocence over a certain amount of time could result in the loss of liberty without due process of law. *Id.* at 144 ("Obviously, one in [plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment.").

Other courts have considered how long a period of wrongful incarceration must be to implicate constitutional concerns. In *Rodriguez v. Roth*, 516 F. Supp. 410 (E.D. Pa.1981), the plaintiff was held detained for 30 days on a facially valid warrant before the prison officials discovered that they had the wrong man. The *Rodriguez* Court held that plaintiff's constitutional rights had been implicated. Similarly, in *Andujar v. City of Boston*, 760 F. Supp. 238 (D. Mass.1991), the court held that a plaintiff who was detained for twelve days despite his repeated assertions of mistaken identity had stated a claim for deprivation of liberty without due process of law. Relying on *Rodriguez* and *Andujar*, the Sixth Circuit found that a plaintiff who was imprisoned for 41 days raised material issues of fact as to whether the deputy sheriffs violated his due process rights under the

15

Fourteenth Amendment. *Gray v. Cuyahoga County Sheriff's Dept.*, 150 F.3d 579, 582-83 (6th Cir. 1998). In an unreported case, however, the Sixth Circuit held that 4 ½ days was insufficient to demonstrate a constitutional violation. *Flemister v. City of Detroit*, 358 Fed. Appx. 616 (6th Cir. 2009).

Given that plaintiff was wrongfully detained for only five days, under Sixth Circuit case law, he has not demonstrated that a violation of his due process rights occurred. Because plaintiff has not demonstrated a violation of his constitutional rights, it is unnecessary to consider whether defendants are entitled to qualified immunity.

Plaintiff's state law claims against the individual County defendants also fail. Under Ohio Revised Code § 2744.03, the individual County defendants are entitled to immunity for plaintiff's claims of assault and negligent infliction of emotional distress. Section 2744.03 provides in relevant part:

> [T]he employee is immune from liability unless one of the following applies:
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Ohio Rev. Code § 2744.03(A)(6). Executing an arrest warrant and processing an arrestee is clearly within the scope of the employment for the arresting deputies and the Jail ID

16

technicians. Because plaintiff failed to come forward with evidence demonstrating that defendants' acts or omissions were made with malicious purpose, in bad faith, or in a wanton or reckless manner, plaintiff cannot show that the individual County defendants are not entitled to immunity.

A claim for intentional infliction of emotional distress requires the plaintiff to demonstrate that (1) defendants intended to cause him serious emotional distress; (2) defendants' conduct was extreme and outrageous; and, (3) defendants' conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408 (1994). Here, plaintiff has not come forward with any evidence to support a finding that defendants intended to cause him serious emotional distress. As a result, defendants Franklin County Board of Commissioners, Franklin County Sheriff's Office, Franklin County Prosecutor's Office, Franklin County Sheriff Zach Scott and Corporal Benjamin Jones, Deputy Jeffrey Rannebarger, and ID Techs Lisa Beck and James Spaulding's July 19, 2013 motion for summary judgment (doc. 36) is GRANTED.

**V.      Conclusion**

For the reasons stated above, defendants Aisha DiLello and the City of Columbus's June 17, 2013 motion for summary judgment (doc. 35) and defendants Franklin County Board of Commissioners, Franklin County Sheriff's Office, Franklin County Prosecutor's Office, Franklin County Sheriff Zach Scott and Corporal Benjamin Jones, Deputy Jeffrey Rannebarger, and ID Techs Lisa Beck and James Spaulding's July 19, 2013 motion for summary judgment (doc. 36) are GRANTED.

The Clerk of Court is DIRECTED to enter JUDGMENT for defendants. This case is CLOSED.

s/Mark R. Abel  
United States Magistrate Judge