IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Antonio C. Morales, | : | |
| Plaintiff | : | Civil Action 2:12-cv-00580 |
| v. | : | |
| Franklin County Sheriffs, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

**ORDER**

This matter is before the Court on plaintiff Antonio C. Morales' October 15, 2013 objection to the October 2, 2013 Order granting defendants' motion for summary judgment (doc. 45). Defendants Franklin County Board of Commissioners, Franklin County Sheriff's Office, Franklin County Prosecutor's Office, Franklin County Sheriff Zach Scott, Corporal Ben Jones, Deputy Jeff Rannebarger, Lisa Beck, and James Spaulding ("the County Defendants") and the City of Columbus and Aisha DiLello's November 20, 2013 motion to strike plaintiff's objection (doc. 48) is also pending before the Court.

As a preliminary matter, defendants' motion to strike (doc. 48) is DENIED. Plaintiff's motion is more accurately characterized as a motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure rather than an objection, and the Sixth Circuit appears to consider it such a motion as well. (Doc. 47.) *See Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979)(noting that even though the Federal Rules of

Civil Procedure do not contemplate motions to reconsider and vacate, a motion that asks a court to vacate and reconsider or to reverse its previous holding may properly be treated under Rule 59(e) as a motion to alter or amend a judgment).

Summary. The amended complaint pleaded claims for assault, a violation of 42 U.S.C. § 1983, negligent infliction of emotional distress, and intentional infliction of emotional distress. The Court in its October 2 Order held that plaintiff's § 1983 claim was controlled by *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) because the arrest was made pursuant to a valid arrest warrant. Since plaintiff was in custody for five or fewer days, he was not deprived of his liberty without due process of law. The Court further held that under Ohio Revised Code § 2744.03 the individual Franklin County defendants were immune from suit on the state law claims.

Plaintiff again argues that the individual County defendants are not entitled to Ohio statutory immunity and that there is sufficient evidence to permit his § 1983 claim to go to trial.

Evidence about Morales' arrest and incarceration. It uncontroverted that Columbus Police detective Alisha DiLello had probable cause to conclude that Antonio Camilpa Morales, an adult, had sex with a fourteen year old girl and a sixteen year old girl. The sex allegedly took place at 285 Wellington Willows Way, Columbus, Ohio. Detective DiLello was unable to locate Morales at that address. On November 12, 2010, she went to 138 Elmsbury Court, Columbus, Ohio and spoke with the sixteen year old female and Antonio Camilpa Morales. He acknowledged having sex with both the

fourteen year old and the sixteen year old. He said he lived at 138 Elmsbury Court. (Alisha DiLello's June 7, 2013 Affidavit, ¶¶ 4-6, Doc. 36-5, PageID 181.) The Franklin County Grand Jury indicted Anonio C. Morales on two counts of unlawful sexual conduct with a minor in violation of Ohio Revised Code § 2907.04. (Doc. 36-1, PageID 169.) The warrant listed Morales' address at 138 Elmsbury Court. (*Id.*)

On May 11, 2011, the Franklin County Prosecuting Attorney's office sent an email to Franklin County Sheriff's Corporal Benjamin Jones asking that "Antonio Morales, male, hispanic, DOB 12/20/83, no social, LKA: 138 Elmsbury Ct., Cols. 43213 OR 285 Wellington Willows Way, Cols." be arrested. (Doc. 36-2, PageID 170.) On May 25, 2011, Jones went with the Sheriff's Warrants and Extraditions Unit to 285 Wellington Willows, but could not locate the suspect. They then went to the Wellington Willows Way rental office, where they learned that a tenant named Antonio C. Morales lived at 296 Wellington Willows Way. The officers looked at his May 14, 2011 rental application and a photocopy of his driver's license. They went to 296 Wellington Willows Way, but Morales was not there. (Benjamin Jones's July 18, 2013 Affidavit, ¶¶ 5-7, Doc. 36-6, PageID 185; Doc. 36-3, PageID 171-79.)

The next morning, Jones and other officers returned to 296 Wellington Willows Way, and the door was answered by the man whose driver's license photo he had seen in the rental office the day before. Jones arrested plaintiff Antonio Cendejas Morales. When he executed the arrest warrant, Jones had only the information from the email. He did not have a photograph of the suspect. (May 24, 2013 Deposition of Benjamin J.

3

Jones, p. 12, Doc. 36-10, PageID 197.) Deputy Jeffrey Rannebarger transported plaintiff Morales to jail. When Morales told him he was not the person named in the arrest warrant and the birth date he gave was not that in the warrant, Rannebarger called Jones. Jones told Rannebarger that he understood what he was saying, but that he was convinced they had the right man. (*Id.*, 25-26, PageID 200-01; Jeffrey Rannebarger's July 16, 2013 Affidavit, ¶ 6.) Jones testified that they had no photo, no social security number, and no good address. He assumed the driver's license must have been fraudulent. (*Id.*, 28, PageID 202.) He further testified that if he had seen Morales' permanent resident card there is a possibility he might have done further investigation. (*Id.*, 29-30, PageID 203-04.) But he also testified that "it wouldn't be the first time that a permanent resident card [or a Social Security card] would have been fraudulent." (*Id.*, 30-31, PageID 204-05.)

Accepting as true the evidence offered by plaintiff, as the court must on summary judgment, plaintiff Morales was arrested around 6:00 a.m. on May 26, 2011. (Antonio C. Morales' May 3, 2013 Deposition, 31, Doc. 36-12, PageID 218.) When the officers took him down to the floor and cuffed him, Morales called to his wife and told her to bring his wallet, and to take his ID out of his wallet and show it to them. (*Id.*, 32, PageID 219.) Morales told the officers who were cuffing him that he had not committed a crime and that they were arresting the wrong person. He told them he had identification and could prove his identity. The officer responded that he was in the country illegally and that he did not have valid identification. He repeatedly requested

4

the opportunity to provide the identification, but was told that was not necessary. (Antonio Morales Cendejas's August 8, 2013 Affidavit, ¶¶ 12-13, Doc. 40-1, PageID 241.) His wife tried to give the officer his ID, but the officer would not take it. The officer told Morales to be quiet, that he had no right to talk. (*Id.*, ¶¶ 14-15, PageID 241.) Had he been permitted to produce identification, Morales could have shown the officers his valid Ohio driver's license, Permanent Resident Card, and Alien Registration Card. These documents would have demonstrated that he was in the country legally and was born October 24, 1976, not December 20, 1983, as was the defendant Antonio C. Morales. (*Id.*, ¶¶ 18 and 20, PageID 242.)

Plaintiff Morales was arrested the morning of May 26 and remained in jail 5-6 days. Morales testified that he was in jail eight days and got out on a Tuesday or a Wednesday. (Morales Dep., 33, PageID 220.) Neither side submitted jail records, but DiLello's uncontroverted affidavit stated that she went to the jail and saw that plaintiff was not the man she had interviewed. Franklin County made arrangements for his release from jail on May 30, 2011. (DiLello Aff., ¶, PageID 183.) May 26 was a Thursday. May 30 was a Monday. So accepting Morales' testimony, he was released on either Tuesday May 31 or Wednesday June 1.[1]

---

[1] The criminal docket in *State v. Antonio C. Morales*, 11CR3279 (Fr. Cty. C.P. Ct. June 1, 2011) indicates that the warrant was executed Thursday, May 26, 2011. Counsel entered an appearance for Morales in the early afternoon of Friday, May 27. The same day counsel also filed a demand for discovery. On Tuesday, May 31, a judge signed an order: "Release Antonio Morales from jail, slate # 11-0013502. [W]rong person. Reinstate warrant for correct Antonio Morales Elmsbury Ct." That order was filed at 4:14 p.m. (http://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/

Discussion. Although not clearly articulated in the amended complaint, plaintiff's opposition to defendants' motion for summary judgment, or in his motion to reconsider, plaintiff appears to asserts claims under the Fourth Amendment for false arrest and malicious prosecution. For fourth amendment claims based on the arrest of the wrong person on a valid arrest warrant, there are two lines of cases that sometimes intersect. The first is based on *Hill v. California*, 401 U.S. 797, 802 (1971). *Hill* is a warrantless arrest case. Police mistook the occupant of Hill's apartment, Miller, for Hill. They had probable cause to believe Hill had committed robbery. They went to Hill's apartment, found Miller there, arrested him, and seized evidence without a warrant. Hill later tried to suppress the evidence seized from his apartment. The Supreme Court held that because the police had probable cause to arrest Hill and had a reasonable good faith belief that Miller was Hill, a diary seized when Miller was arrested was properly admitted into evidence at Hill's trial. *Id.*, at 802-05.

The second line of cases is based on *Baker v. McCollan*, 443 U.S. 137 (1979), in which the police had a warrant for the arrest of "Linnie" McCollan, and they arrested Linnie McCollan. Unfortunately, Linnie's brother Leonard had obtained a duplicate driver's license in Linnie's name, been arrested under Linnie's name, then absconded. Linnie was arrested during a routine traffic stop. He spent three days in jail over a New Year's weekend until the officials obtained a photograph of "Linnie" and determined they had the wrong man in custody. *Id.* at. 140-42. The Supreme Court held that because

---

caseSearch?I8LJRaSvBDOBmoHuff9h)(Accessed December 20, 2013.)

McCollan was arrested pursuant to a facially valid warrant, he had no claim arising out of his arrest. *Id.*, at 143-44. The Court assumed, *arguendo*, that someone in McCollan's position, who repeatedly protested his innocence, could not be held indefinitely. *Id.*, at 145. Given the due process protections built into our criminal justice system, the Court held that a sheriff executing an arrest warrant is not

> required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id.*, at 145-46.

Most of the cases following *Baker* do not look at the reasonableness of the arrest. Once it is established that the arrest was pursuant to a valid warrant, the focus is whether the length of incarceration is consistent with due process of law. *See, Gray v. Cuyahoga County Sheriff's Department,* 150 F.3d 579, 583 (1998)(Holding that whether a 41-day incarceration deprived the plaintiff of due process depended on whether his jailers "acted with something akin to deliberate indifference in failing to ascertain that the Dwayne Gray they had in custody was not the person wanted . . . ."); *Fettes v. Hendershot,* 2010 WL 1687727 (6th Cir. April 27, 2010)(Held 2-hour custody not actionable); *Flemister v. City of Detroit,* 2009 WL 4905904 (6th Cir. December 18, 2009)(Held 4½ day incarceration not actionable); *Jama v. City and County of Denver*, 2010 WL 3614027, *6-*7 (D. Colo. September 9, 2010)(recognizing that under *Hill* "mistaken

identity arrests are governed by a 'reasonableness' standard", but dismissing the claim because *Baker* "suggests that an officer does not have an affirmative duty to investigate every claim of mistaken identity"); *Rodriguez v. Roth*, 516 F. Supp. 410 (E.D. Pa. 1981)(a plaintiff detained for 30 days stated a due process claim); *Andujar v. City of Boston*, 760 F. Supp. 238 (D. Mass. 1991)(held that a plaintiff detained for twelve days despite his repeated assertions of mistaken identity had stated a due process claim).

But due process is not the only constitutional protection when a defendant is arrested pursuant to a valid warrant. The arresting officers must have good reason to believe that the person being arrested is the person named in the warrant. While the case law is clear that arresting officers are not required to take seriously *all* claims of mistaken identity, *Baker* does not hold that arresting officers are *never* required to investigate such claims.[2] The Supreme Court recognized in *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." Nonetheless, the officers' execution of a warrant must be "objectively understandable and reasonable." 480 U.S. at 88. The fourth amendment requires that the arresting officers "reasonably believe that the person arrested is the person sought."

---

[2]In *Baker* and many of the cases following *Baker*, there was ample evidence supporting the officers' belief that they were arresting the defendant named in the warrant. Linnie Baker's brother had assumed his identity, had a duplicate driver's license in his name, and was arrested and prosecuted under that name.

*Catlin v City of Wheaton*, 574 F3d 361, 365 (7th Cir. 2009); *United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996).

There are circumstances where it would be clearly unreasonable not to investigate a claim mistaken identity. For example, if the person arrested did not match the physical description of the defendant on the warrant or readily available to the arresting officers because of a large difference in height, weight, racial characteristics, tattoos or the like, it would be unreasonable for the officers to arrest him without further investigation. *See, Maxwell v. City of Indianapolis*, 998 F.2d 431, 434-35 (7th Cir. 1993)(Six inches in height and 100 pounds). To the extent that a court may consider the reasonableness of an arrest when the arrest was pursuant to a valid arrest warrant, the test appears to be whether defendants knew or should have known of the mistaken identity, *see, Gant v. County of Los Angeles*, 765 F. Supp.2d 1238, 1248 (C.D. Calif. 2011) or "acted with something akin to deliberate indifference" as to whether plaintiff was the person named in the indictment. *See, Gray*, 150 F.3d at 583.

In *Brinson v. Syas*, 735 F. Supp. 2d 844 (N.D. Ill. 2010), the arresting officers pulled over Kendale J. Brinson on a routine traffic stop. When the officers conducted a name check, they were alerted that a warrant existed for an individual named "Jerry Talley." According to the warrant Talley was born in May 1963, was 5'09" tall and weighed 160 pounds. The warrant also listed the name "Kendale J. Brinson" as one of Talley's aliases. Brinson, however, was 6'5" tall and weighed 198 pounds and was born in 1966. The officer testified that these type of discrepancies are not uncommon, although he

conceded that an 8" height difference was significant. Despite these differences, the officers arrested Brinson. Brinson informed the police that they had the wrong individual. Brinson provided the officers with two forms of federal identification, a postal identification based on his employment with the U.S. Postal Service and his military identification. One of the officers at the scene told the others that Brinson did not meet the warrant's description and that they could let him go. Nevertheless, Brinson was arrested.

On these facts, the court determined that there was a question of material fact as to whether the arrest of Brinson was reasonable:

> Here, the Officers encountered an individual with the same name as an alias listed in a warrant for another individual. Both individuals were African–American males and were roughly the same age. The crucial discrepancy, however, is the substantial physical difference between the two. Brinson was a full eight inches taller than Jerry Talley and weighed over forty pounds more. As the Seventh Circuit observed in *Maxwell* "[w]hile weight is a mutable characteristic, the size of the difference here should have given the police officers pause." 998 F.2d at 435 (affirming the denial of summary judgment where the person arrested was six inches taller than the suspect). This case presents more than a trivial difference between a birth date or a name; it presents a significant difference between an unusually large individual and a fairly average one. Officer Syas himself testified that an eight-inch height difference was "significant," despite the recurrence of discrepancies in warrants. *See* Syas Dep. at 94–95.
>
> Moreover, it is noteworthy that Brinson did not have the same name as the person listed in the warrant, as the Officers suggest. Brinson's name was merely one of Jerry Talley's aliases; it was not the primary name. Not only that, but Brinson testified that after he insisted he was not Jerry Talley, Officer Timothy Gaskin went back to the squad car and, when he returned, suggested to the other Officers that they let Brinson go because they did not have the right person. Brinson, according to his testimony,

10

> was rather shocked when Officer Blaydes ignored this suggestion. This testimony, coupled with the significant physical discrepancies, the name of the alias and the Officers' failure to investigate further, is enough to undermine the reasonableness of the Officers' decision to arrest Brinson. This is not to say conclusively that the Officers acted unreasonably. The Court merely finds that Brinson has put forth enough evidence to create a triable issue as to the reasonableness of the Officers' decision to make an arrest.

735 F. Supp.2d at 853.

Less significant discrepancies between the person described in the warrant and the person arrested have been held not to be actionable. Juan Martinez was mistakenly arrested and detained for nine days on a bench warrant for another person with the same name and birth date. Despite differences in the physical description in the warrant concerning the skin tone, height and weight, the discrepancies were "too minor to preclude a finding of probable cause" *Martinez v. City of New York,* 340 Fed. Appx. 700, 701, 2009 WL 2222925 at *2 (2nd Cir. ,2009)(citation omitted). "A difference of 'slightly more than two inches in height and twenty pounds in weight, as well as different skin tone' when the two individuals had the same name and birth date, is not enough to uphold a claim of false arrest." *Id.* The court further stated:

> [W]e acknowledge the personal cost to Martinez. The coincidence of name and birth date left an innocent man in jail for nine days, which is a cause for regret and concern. In a city as large as New York, it is not surprising that a law-abiding citizen would share the same name and birth date with a "wanted" individual.

*Id*.

11

The arresting officers here had only skeletal information identifying the defendant named in the indictment, and had they taken the time to look at Mr. Morales' permanent resident card, Social Security card, and other identification documents they might have made phone calls and realized their mistake.  Additionally, the officers knew that the birth dates did not match and that they were not provided with a complete name or a physical description of the person named in the warrant. Facts supporting the arrest include that plaintiff had the same name as that on the indictment, Antonio C. Morales, he lived in the same apartment complex, and he was Hispanic. Here, the Court must decide whether, on balance, the evidence offered by plaintiff would be sufficient for reasonable jurors to conclude by the greater weight of the evidence that defendants' actions of the arresting him were so unreasonable that they seized his person in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. I conclude that further briefing on this question is needed.

Defendants are DIRECTED to file briefs concerning the reasonableness of the arrest no later than January 15, 2014. Plaintiff's reply brief must be filed no later than January 29, 2014. Counsel are also DIRECTED to file the full transcripts of the depositions of Antonio C. Morales, Aisha DiLello, Benjamin Jones, Jeffrey Rannebarger, and any additional depositions upon which they rely in the briefing of plaintiff's motion to reconsider the grant of summary judgment.

s/Mark R. Abel<br>
United States Magistrate Judge